ratification. Even were we to ignore the plaintiff's other testimony on this subject, the acts speak so loudly of recognition that it required no words. That admission, as disclosed by a careful examination of the record, had reference, apparently, to a single interview; and is thus not in conflict with his narration of the occurrences at frequent other interviews, at which Clark emphatically assured him that the contract would be carried out. On the whole case, we think that we should be subscribing to an injustice, were we to deny recovery to the plaintiff.

In its important features, this case is analogous to that of Hall v. Herter, 83 Hun, 19, 31 N. Y. Supp. 692. There, as here, a corporation succeeded a co-partnership of the same name; there, to a similar extent as here, the parties interested, and the nature and methods of conducting the business, were substantially identical before and after incorporation. In reversing a dismissal of the complaint, the court held that, under the circumstances of the case, a contract made with the co-partnership was enforceable against the corporation, as there was evidence of intention on the part of both parties that the contract should be assumed. No formal resolution or vote was required to make it a binding obligation. Mr. Justice Parker says:

"While a corporation is not bound by the engagements made on its behalf by its promoters before its organization, it may, after it is organized, make such engagements its contracts, by adopting them as its own. Less evidence tending to show adoption will be required to establish it where the officers were also the promoters, than where the officers and promoters were different persons."

After a retrial, resulting in a verdict for the plaintiff, an appeal was taken to the general term, and thence, after affirmance, to the court of appeals, where a final affirmance was had (Hall v. Herter, 157 N. Y. 694, 51 N. E. 1091); the court adopting the opinion of Mr. Justice Van Brunt at the general term. The same questions were involved on the retrial, and Mr. Justice Van Brunt, in announcing the decision of the court, observes that:

"If a contrary rule were adopted, these corporations would be mere traps for the purpose of deceiving the unwary, and be the means of using the charters conferred by the state as an instrument of fraud." Hall v. Herter, 90 Hun, 280, 35 N. Y. Supp. 769.

The judgment must be affirmed.

Judgment affirmed, with costs to the respondent. All concur.

---

PERKINS v. ALLEN. [1]

(Supreme Court, Appellate Term. June 28, 1899.)

APPEAL—QUESTIONS OF FACT—JUDGMENT—CONCLUSIVENESS.
    An appellate court will not reverse a judgment resting on disputed facts, unless clearly against the weight of the evidence, or an examination of the record discloses prejudice, passion, or partiality by the trial court.

Appeal from municipal court, borough of Manhattan, Seventh district.

[1] For dissenting opinion, see 59 N. Y. Supp. 258.

Action by Mary S. Perkins against Ethan Allen. From a judgment allowing defendant a counterclaim, plaintiff appeals. Affirmed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVENTRITT, JJ.

Baldwin & Blackmar, for appellant.

Oppenheim & Severance, for respondent.

FREEDMAN, P. J. In an action brought to recover the sum of $450 conceded to be due for rent of premises, the defendant was allowed a counterclaim, amounting to the sum of $200, for repairs done upon the premises, and from the judgment granting such allowance the plaintiff appeals.

An exhaustive and critical examination of the record does not convince me that the judgment in this case should be reversed. The defendant leased premises belonging to the plaintiff in May, 1896, for the term of three years from the 1st day of October following. He claims that at the time the lease was executed the plaintiff represented that the premises were in perfect condition, especially the plumbing; and although the lease contained a covenant allowing the tenant to expend the sum of $150 in "interior" repairs, and deduct the same from the rent, he was informed that no part of that sum would be required in putting the plumbing in condition, as that was then in perfect order. The defendant entered into possession of the premises in October, 1896. About this time what was called a "peppermint test" of the plumbing was made, and the plumber making it reported the pipes in perfect condition. The defendant expended the sum of $150 in painting, papering, etc. Subsequently himself and family were taken ill, and, upon the advice of his family physician, the defendant and his family removed from the house. After his removal, he employed a plumber to make another test, in order to learn the condition of the pipes; and it was then ascertained that the plumbing was in a very defective situation, that noxious gases were escaping, and that many repairs must be made to render the house fit for human habitation. These facts were communicated to the plaintiff, and several conversations were had between the parties relative to the making of the necessary repairs; the defendant at all times refusing to again occupy the house unless the same was made safe. The defendant testifies positively that the plaintiff authorized him to go on and have the proper work done, which he did, and which cost something over $250, and which amount was paid by the defendant. This authorization was denied by the plaintiff, and upon the question of fact thus raised the whole case hinges.

As an evidence that the plaintiff did not direct the repairs to be made, it is urged that the defendant continued to pay the stipulated monthly rent for several months after such work was done, without making any claim to compensation for the amount paid by him for such repairs. This he reasonably explains by showing that he had no knowledge of the bill for such repairs until long after they were made, supposing that the bill had been paid by the plaintiff. It is also claimed that the testimony shows that the defendant ordered the work done by the plumber before any of the conversations were

had between the parties regarding the work. In support of this, the attention of the defendant was called, upon his cross-examination, to the date and contents of a letter written by him to the plaintiff, which it is asserted shows that the defendant had previously ordered the work done; but the defendant, although not able to state definitely the exact time of the conversation had with the plaintiff, swears positively that the plaintiff had authorized him to go ahead and have the repairs made, before the same was begun, and before he gave any directions regarding them. The repairs done by the defendant upon the premises were extensive and permanent, and were evidently not contemplated by either of the parties at the time of the execution of the lease. They were of such a character as to inure for the benefit of the landlord for years. The trial judge allowed a much smaller amount than their actual cost. The refusal of the tenant to reoccupy the house until the same were made was a sufficient consideration for the making of an agreement by the plaintiff authorizing the work to be done. The court below had the advantage (not possessed by this court) of seeing the witnesses, of observing their demeanor on the stand and the manner in which they gave their testimony, and thus was better able to judge what weight should be given to their evidence than could otherwise be obtained. In view of all the facts and circumstances disclosed by the testimony, I fail to see in what respect injustice has been done the plaintiff. It is an often-quoted and well-settled rule that appellate courts will not reverse judgments resting upon disputed questions of fact, unless they are clearly against the weight of evidence, or an examination of the record discloses the manifestation of prejudice, passion, or partiality by the trial court. Such does not appear in the case at bar. I am therefore in favor of affirming the judgment.

LEVENTRITT, J., concurs. MacLEAN, J., dissents.

---

CAMPE v. WEIR.

(Supreme Court, Appellate Term. June 28, 1899.)

1. CARRIERS—LIABILITY FOR NEGLIGENCE—LIMITATION BY CONTRACT.
    A carrier may limit its liability for negligence by a special contract.

2. SAME—ACTION FOR BREAKAGE—BURDEN OF PROOF.
    In an action against a carrier for breakage, the burden is on the shipper to show the carrier's gross negligence, for which only it contracted to be liable.

3. SAME—PRIMA FACIE CASE OF GROSS NEGLIGENCE.
    Plaintiff offered his violin to be expressed, securely packed in a felt-lined leather case, padded so that it was immovable; the shape of the case clearly indicating what it contained. Thus packed, defendant had before frequently received and carried it uninjured between the same points. At defendant's special request, the case was inclosed in a crate, for additional protection. On its arrival at its destination, one of the slats of the crate was missing, another was loosened, and, though the case was intact, the violin was cracked longitudinally along the belly and back, and the bridge was broken. The case was shown to be of sufficient strength, and not impaired by previous use. It resisted a hard blow from plaintiff's fist, and an expert packer jumped on it without affecting it. *Held* to establish a prima facie case of gross negligence.